UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADAM P. BECK, M.D., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>H. BRIGGS BEDIGIAN and GILMAN & BEDIGIAN, LLC,<br><br>Defendants. | *<br>*<br>*<br>*<br>*   Civil Action No. 1: 22-cv-10389-IT<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

March 31, 2023

TALWANI, D.J.

Pending before the court is Plaintiffs Adam Beck, Adam P. Beck, M.D., P.C. ("Beck P.C."), and Bethany Carey's Motion for Reconsideration ("Motion") [Doc. No. 37] of Memorandum and Order [Doc. No. 32] dismissing Plaintiffs' claims against Defendants H. Briggs Bedigian ("Bedigian") and Gilman & Bedigian, LLC ("Gilman & Bedigian") for lack of personal jurisdiction. For the reasons set forth below, Plaintiffs' Motion [Doc. No. 37] is DENIED.

**I.    Background**

A.   *The Original Record Before the Court and the Court's Findings*

The court's Memorandum and Order [Doc. No. 32] discussed in detail the factual background and the evidentiary record as to personal jurisdiction then before the court and that background is incorporated here by reference.

With respect to general jurisdiction, relying upon Defendant Bedigian's sworn affidavit, the court found that Defendants "are not engaged in continuous and systematic activity, unrelated to this suit, such that general jurisdiction exists." Mem. & Order 10 [Doc. No. 32].

As to specific jurisdiction, the court noted that there is a "natural blurring" of the first and second prongs of the analysis—relatedness and purposeful availment—in cases where "the alleged contacts are less tangible than physical presence" and the court must determine "the extent to which the defendant directed an out-of-state activity at the forum state[.]" Id. (quoting Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999)). The court rejected "Plaintiffs' reliance on Calder v. Jones, 465 U.S. 783 (1984), where the Supreme Court found that a newspaper had purposefully availed itself of California because it circulated 60,000 copies in that state and published a libelous story about a celebrity who lived there[.]" Id. at 11. In doing so, the court distinguished Calder from the instant case where Plaintiffs contended that Defendants relied on Beck's name and the Knox medical malpractice case in the blog post to attract business in Massachusetts but proffered no evidence to support such an allegation. Id. The court also found that Plaintiffs had not shown Defendants purposefully availed themselves of Massachusetts where the only fact in the record in support of that claim was that Defendants' website is accessible in Massachusetts. Id. at 12. Accordingly, the court held that specific jurisdiction did not exist over Defendants in Massachusetts. Id.[1]

The court further held that personal jurisdiction as to Defendants did not exist under subsections (a), (b), (c) and (d) of the Massachusetts long-arm statute, M.G.L. c. 223A, § 3. Id. at 4–9. The court found § 3(a) inapplicable where Plaintiffs had not pointed to a single transaction in Massachusetts conducted by Defendants. Id. at 5. Similarly, the court found § 3(b) inapplicable where absent Defendants' advertisement boasting that they handle birth injury cases nationwide in cooperation with local counsel, Plaintiffs had not proffered any evidence to rebut

---

[1] The court did not reach the reasonableness prong of the specific jurisdiction analysis.

Defendants' sworn statement that they have not provided such services in Massachusetts. Id. at 6.

With respect to § 3(c), the court found inapposite the line of cases holding that defamatory statements purposefully directed towards a Massachusetts resident constitute an in-forum act for purposes of § 3(c) where Plaintiffs had not proffered any evidence absent conclusory allegations that Defendants specifically targeted Beck, knew he lived in Massachusetts at the time the blog post was published, or intended to harm his reputation in Massachusetts. Id. at 8.

The court found that § 3(d) did not apply where Plaintiffs had not made any supported allegations that Defendants "regularly" or "persistently" solicit business or engage in conduct in Massachusetts and Defendants provided a sworn affidavit that they have never conducted marketing or advertising campaigns in Massachusetts and have never sent mailings to Massachusetts. Id.

  B. *Further Evidentiary Record Regarding Personal Jurisdiction Provided in Connection with the Pending Motion*

On December 15, 2020, when the blog at issue in this litigation was posted on Gilman & Bedigian's website, Bedigian did not know that Beck lived in Massachusetts. Supp. Aff. of H. Briggs Bedigian ("Bedigian Supp. Aff.") ¶ 11 [Doc. No. 39-1].

Gilman & Bedigian's website includes web pages titled "Massachusetts Medical Malpractice Laws" and "Massachusetts Birth Injury" (collectively "Massachusetts Web Pages"). Id. at ¶ 2. The Massachusetts Birth Injury web page inter alia provides (i) details about the types, symptoms, and causes of birth injuries; (ii) the compensation available for victims, limitations on damages, and statute of limitations for birth injuries in Massachusetts; and (iii) that lawyers at Gilman & Bedigian can assist with birth injury claims in Massachusetts. See Adam. P. Beck

Decl. in Supp. of Mot. for Recons. ("Beck Decl.") ¶ 4 [Doc. No. 38]. Specifically, the web page provides:

> In Massachusetts, a birth injury is a legal term for what happens when a newborn baby or an unborn fetus is hurt because a doctor or other healthcare professional committed medical malpractice. The consequences of a birth injury are often life long, and can even be fatal.
>
> Recovering compensation is essential if the victim and his or her family want to live as close to a full life as possible. The birth injury lawyers at Gilman & Bedigian can help make that happen for victims in Massachusetts.

Ex. 1, Massachusetts Birth Injury, Gilman & Bedigian's website 10 [Doc. No. 38-1]. The web page ends with the following:

> BIRTH INJURY LAWYERS AT GILMAN & BEDIGIAN SERVE MASSACHUSETTS
>
> If you or your child has been born with a birth injury and suspect that it was caused by a doctor's malpractice, reach out to the birth injury lawyers at Gilman & Bedigian by contacting us online.

Id. at 14. The Massachusetts Medical Malpractice Laws web page includes, inter alia, information about who may bring a claim for medical malpractice against whom, how long one has to bring a claim, types of permissible damages awarded, expert witnesses, settlements, how to find legal representation, and notable decisions from Massachusetts. Ex. 1, Massachusetts Medical Malpractice Laws, Gilman & Bedigian's website 2–9 [Doc. No. 38-1]. This web page ends with the following:

> LET US HELP
>
> If someone you are close to has been seriously injured or worse, you are naturally devastated not only by what has happened, but by the effect that the injury or loss has had on you and your family. At a time when you're vulnerable, traumatized and emotionally exhausted, you need a team that will support you through the often complex process that lies ahead.

Id. at 9.

Gilman & Bedigian's website contains similar Medical Malpractice Law and Birth Injury web pages for the other forty-nine states. Bedigian Supp. Aff. ¶ 4 [Doc. No. 44-3].

As of August 2022, when the Defendants filed their opposition to the motion for reconsideration, the Defendants had not provided any services to Massachusetts residents and have not engaged with local counsel to provide such services, nor had plans to do so. Id. at ¶ 13.

Gilman & Bedigian's website has an interactive chat feature to contact a Bedigian representative about a potential malpractice case. Beck Decl. ¶ 6 [Doc. No. 38]. Gilman & Bedigian does not provide services through the interactive chat feature and the website provides a disclaimer that use of the interactive chat feature does not create an attorney-client relationship. Bedigian Supp. Aff. ¶¶ 7–8 [Doc. No. 39-1]. In a declaration submitted with Plaintiffs' reply brief, Beck declares that in September 2022, he asked through the interactive chat feature the question "[c]an you do a birth injury case in Massachusetts?" and received the response "Yes. [W]e do Birth injury cases throughout the country." Supp. Decl. of Beck in Supp. of Mot. for Recons. ("Supp. Beck Decl.") ¶ 8 [Doc. No. 44-2]; Ex. 1, Screenshot of Chat [Doc. No. 44-1].

In another declaration submitted with Plaintiffs' reply, Attorney Marcus Scott declares that in September 2022, he performed a Google search with the keywords "Massachusetts, Medical Malpractice, Birth Injury" that resulted in the Gilman & Bedigian website appearing on page one of the search results. Marcus Scott Decl. ("Scott Decl.") ¶¶ 3, 5 [Doc. No. 38].[2]

---

[2] Scott asserts that "for this link to appear on page one of an internet search, active marketing to Massachusetts [c]itizens with search engine optimization would have occurred by . . . Defendants." Scott Decl. ¶ 5 [Doc. No. 44-3]. His declaration, however, does not demonstrate that this opinion is based on sufficient facts or data, that it is the product of reliable principles and methods, or that he has reliably applied the principles and methods. See Fed. R. Evid. 702.

## II.    Standard of Review

"A district court may grant a motion for reconsideration 'if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.'" United States v. Cintron, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)). "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright, et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)). "Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Id.

## III.    Discussion

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. Nowak v. Tak How Inves., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

### C.    *Due Process Requirements*

The due process inquiry requires that there be "minimum contacts" between the defendant and the forum state. Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995) (quoting Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). Thus, a court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage

with the forum state," and may exercise specific jurisdiction over a cause of action that "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter Acad., 196 F.3d at 288.

       1.       General Jurisdiction

"General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'" Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Phillips Exeter Acad., 196 F.3d at 288). "To permit the exercise of general jurisdiction, the defendant must 'engage[ ] in the 'continuous and systematic' pursuit of general business activities in the forum state.'" Id. at 32 (quoting Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)). For purposes of the general jurisdiction analysis, we "consider all of a defendant's contacts with the forum state prior to the filing of the lawsuit." Id. at 29 (quoting Harlow v. Children's Hosp., 432 F.3d 50, 65 (1st Cir. 2005)).

Plaintiffs contend that Defendants have "continuous and systematic" contacts with Massachusetts through their website such that general jurisdiction exists over the Defendants. Pls.' Mem. in Supp. 13 [Doc. No. 38]. "It is clear that 'the mere existence of a website that is visible in a forum and that gives information about a company and its products [and services] is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.'" Cossaboon, 600 F.3d at 35 (quoting McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005)). "Given the omnipresence of internet websites, such a rule would eviscerate the limits on personal jurisdiction over out-of-state defendants." Id. (internal quotation marks omitted). "Instead, for website activity to support the exercise of personal jurisdiction, '[s]omething more is necessary, such as interactive features which allow the successful online ordering of the defendant's

7

[services].'" Id. (quoting McBee, 417 F.3d at 124). However, to the extent that Gilman & Bedigian's website contains an interactive feature, Bedigian has sworn that no services are provided through it and a visitor to the website who wants to retain Gilman & Bedigian as counsel can only do so after an in-depth consultation process resulting in the execution of a written agreement. Bedigian Supp. Aff. ¶¶ 8–9 [Doc. No. 39-1].

Moreover, "[i]n addressing what 'more' is required to support the exercise of general jurisdiction based on website activity, courts have focused on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website." Cossaboon, 600 F.3d at 35. As of August 2022, Defendants had not provided any services to Massachusetts residents and had not engaged with local counsel to provide such services, nor had plans to do so.

Accordingly, the court finds that general jurisdiction does not exist as to Defendants in Massachusetts.

2. Specific Jurisdiction

"'Specific personal jurisdiction . . . may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Warren Envtl., Inc. v. Source One Envtl., Ltd., 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Id. (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016)).

Plaintiffs contend that even if Defendants have not handled any cases in Massachusetts or generated any revenue from the state, they still have purposefully availed themselves of Massachusetts by advertising on their website. Pls.' Mem. in Supp. 14 [Doc. No. 38]. Specifically, Plaintiffs point to the Massachusetts Web Pages on Gilman & Bedigian's website and its interactive features, including the chat feature to contact the firm in real time and the "contact us" online option. Id. Defendants contend that the Massachusetts Web Pages do not establish the necessary nexus required where the pages are separate from the blog post giving rise to Plaintiffs' action. Defs.' Opp'n 14 [Doc. No. 39].

"As the First Circuit has stated, the relatedness requirement—'that a suit arise out of, or be related to' [d]efendant's forum activities—'ensures that the element of causation remains in the forefront.'" Back Bay Farm, LLC. v. Collucio, 230 F.Supp.2d 176, 186 (D. Mass. 2002) (quoting Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 206–07 (1st Cir. 1994)). "Relatively speaking, the relatedness inquiry is to be resolved under 'a flexible, relaxed standard.'" Baskin-Robbins, 825 F.3d at 35 (quoting Pritzker, 42 F.3d at 61).

"There is a natural blurring of the relatedness and purposeful availment inquiries in cases (like this one) in which the alleged contacts are less tangible than physical presence; in such circumstances, an inquiring court must determine the extent to which the defendant directed an out-of-state activity at the forum state in order to ascertain whether the activity can be termed a contact at all." Phillips Exeter Acad., 196 F.3d at 289. "This determination bears at least a family resemblance to a determination of whether a defendant purposefully availed himself of the protections of the forum state. Notwithstanding this resemblance, however, the inquiries are different . . . ." Id.

While Bedigian's blog post, titled "A New Hampshire Woman is Left Legally Blind After Unnecessary Procedure[,]" identifies Beck by name and refers to him as a "local family eye doctor[,]" it does not indicate that Beck resides in or has any other connection to Massachusetts. Verified Compl. ¶¶ 21–22 [Doc. No. 1-1]. Rather, the blog post details the jury verdict of a trial in which Beck was a defendant in New Hampshire. Moreover, Bedigian attests that at the time the blog post was written he did not know that Beck lived in Massachusetts. Bedigian Supp. Aff. ¶ 11 [Doc. No. 39-1].

"Generally, in-forum effects of a defendant's extra-forum activities, without more, are inadequate to establish relatedness." Bridge St. Auto., Inc. v. Green Valley Oil, LLC, 985 F.Supp.2d 96, 109 (D. Mass. 2013) (citing Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 36 (1st Cir. 1998) ("We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative")). Here, Plaintiffs have not shown that Defendants' publication of the blog post about a New Hampshire trial was directed at Massachusetts. Thus, Plaintiffs have not met the relatedness prong of the specific jurisdiction analysis.[3]

Accordingly, the court finds that it does not have specific jurisdiction over Defendants in Massachusetts.

D.   *Massachusetts Long-Arm Statute*

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the

---

[3] The court need not make a determination as to the second prong—purposeful availment—or the third prong—reasonableness—where the relatedness prong remains unmet. See Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) ("Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction.").

Due Process Clause." Baskin-Robbins, 825 F.3d at 34 (citation omitted). The requirements of both must be satisfied to establish jurisdiction over a defendant. Cossart, 804 F.3d at 18.

The Massachusetts long-arm statute provides as follows:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; (e) having an interest in, using or possessing real property in this commonwealth . . . .

M.G.L. c. 223A, § 3.

Plaintiffs contend that the supplementary evidentiary record shows that Defendants are subject to Massachusetts's long arm statute under subsections (a), (b), (c), and (d). Pls.' Mem. in Supp. 3–12 [Doc. No. 38].

"For jurisdiction to exist under § 3(a), the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549, 551 (1994). Plaintiffs reassert that Defendants "clearly transact business in Massachusetts" because of the Massachusetts Web Pages on Gilman & Bedigian's website. Pls.' Mem. in Supp. 4 [Doc. No. 38]. The court cannot make such an inference where Bedigian has provided an affidavit attesting to the fact that Defendants have not provided any services to Massachusetts residents and have not engaged with local counsel to provide such services, nor have plans to do so. Bedigian Supp. Aff. ¶ 13 [Doc. No. 39-1].

"Section 3(b) provides that '[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action . . . arising from the person's . . .

11

contracting to supply services or things in this commonwealth.'" Hussain v. Rhode Island Hosp., 2019 WL 3546888, at *4 (D. Mass. June 12, 2019) (quoting M.G.L. c. 223A, § 3(b)). Plaintiffs contend that "Defendants had a plan to provide such service, specifically target[ing] the residents of Massachusetts through their advertising campaign on their website," such that the requirements of § 3(b) are met. Pls.' Mem. in Supp. 10 [Doc. No. 38]. Here, again, Plaintiffs' conjecture based on the Massachusetts Web Pages is insufficient in light of Bedigian's affidavit attesting that no such plan exists.

Section 3(c) allows for the exercise of "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . causing tortious injury by an act or omission in this commonwealth." M.G.L. c. 223A, § 3(c). As noted above and in the Memorandum and Order [Doc. No. 32], in the context of defamatory statements courts have found that the requirements of § 3(c) are met when an out of state statement is purposefully directed towards a Massachusetts resident and intended to cause harm in Massachusetts. Mem & Order 7–8 [Doc. No. 32] (citing Neelon v. Krueger, 2016 WL 3390686 (D. Mass. June 17, 2016), Walker v. Adams, 2016 Mass. App. Div. 143 (Dist. Ct. 2016), and Edozien v. XS Micro, LLC, 2014 WL 1260511 (Mass. Super. Ct. Mar. 7, 2014), supplemented, 2014 WL 1260516 (Mass. Super. Ct. Mar. 14, 2014)). However, the additional evidence put forth does not support Plaintiffs' conclusory allegations that Defendants "specifically targeted Beck, knew he lived in Massachusetts at the time the blog post was published, and intended to harm his reputation in Massachusetts." Pls.' Mem. in Supp. 11 [Doc. No. 38]. Indeed, Bedigian attests that at the time the blog post was written he did not know that Beck lived in Massachusetts and, to his knowledge, no other individual at Gilman & Bedigian

knew either. Bedigian Supp. Aff. ¶ 11 [Doc. No. 39-1].[4] Accordingly, the court finds that personal jurisdiction does not exist over Defendants under subsection (c) of the Massachusetts long-arm statute.

Section 3(d) provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action . . . arising from the person's . . . causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." M.G.L. c. 223A, § 3(d).[5] Plaintiffs contend that Defendants "regularly" and "persistently" solicit business in Massachusetts based on the Massachusetts Web Pages. Pls.' Mem. in Supp. 12 [Doc. No. 38]. Such argument is unavailing where "[s]ection 3(d) is the Massachusetts long-arm statute's general personal jurisdiction provision and is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts." Doe # 1 v. JetBlue Airways Corp., 2021 WL 3375107, at *6 (D. Mass. Aug. 3, 2021) (citing Pettengill v. Curtis, 584 F.Supp.2d 348, 357 (D. Mass. 2008) and Krua v. Sirleaf, 2019 WL 1936733, at *4 (D. Mass. May 1, 2019)). As discussed in detail above, the court finds no general jurisdiction as to Defendants in Massachusetts. Accordingly, the court finds that personal jurisdiction does not exist over Defendants under subsection (d) of the Massachusetts long-arm statute.

---

[4] The M.G.L. c. 93A letter Beck served on Defendants prior to initiating the lawsuit to put them on notice of Beck's Massachusetts residence, see Pls.' Mem. in Supp. 11 [Doc. No. 38], has no bearing on whether Defendants knew that Beck resided in Massachusetts at the time the blog post was published.

[5] As discussed above and in the Memorandum and Order [Doc. No. 32], Defendants have not conducted transactions with residents in Massachusetts or derived substantial revenue from such services in Massachusetts.

In sum, the court finds that personal jurisdiction over Defendants in Massachusetts cannot be established under any of the applicable requirements set forth by the Massachusetts long-arm statute, M.G.L. c. 223A, § 3(a)–(d).

## IV. Conclusion

For the foregoing reasons, Plaintiffs' <u>Motion for Reconsideration</u> [Doc. No. 37] of <u>Memorandum and Order</u> [Doc. No. 32] dismissing Plaintiffs' claims against Defendants for lack of personal jurisdiction is DENIED. The case is CLOSED.

IT IS SO ORDERED.

Dated: March 31, 2023                                         /s/ Indira Talwani
                                                              United States District Judge